JO ANN GRADY GREER, Plaintiff v. EDWARD ALLEN GREER II, Defendant

No. COA05-378

(Filed 17 January 2006)

**Child Support, Custody, and Visitation— custody—tender years presumption**

The trial court erred in a child custody case by two of its findings of fact, including the court's personal notice of the natural bond that develops between infants and a mother especially when a mother breastfeeds and the fact that the court finds that the placement with defendant father would be a negative aspect based on the very nature of the age and gender of the minor child (28-month-old female), and the case is remanded for a determination based on the best interests of the child standard, because:

GREER v. GREER

[175 N.C. App. 464 (2006)]

(1) the trial court's beliefs cannot be distinguished from the "tender years presumption" that was abolished in 1977 by an amendment to N.C.G.S. § 50-13.2(a), and it cannot be resurrected under the guise of the court taking judicial notice of the assumptions underlying the doctrine; (2) the trial court did not view the father as equal to the mother and did not evaluate the evidence independent of any presumptions in favor of the mother; and (3) the record did not reflect specific evidence of findings as to the closeness of the minor child and her mother or a particular bond that existed between the two, but instead the trial court relied on personal experience.

Appeal by defendant from order entered 15 July 2004 by Judge Lonnie W. Carraway in Lenoir County District Court. Heard in the Court of Appeals 16 November 2005.

*William C. Coley III for plaintiff-appellee.*

*Dal F. Wooten for defendant-appellant.*

GEER, Judge.

Edward Allen Greer II, the defendant father, appeals from an order providing for joint legal custody and split physical custody of his daughter with plaintiff Joanne Grady Greer. A review of the trial court's findings of fact reveals that a substantial factor in the court's decision was the court's "personal notice of the natural bond that develops between infants and a mother, especially when the mother breast-feeds the infant" and the fact "[t]he Court believes and finds that by the very nature of the age and gender of the minor child (28-month-old female), as it relates to the Defendant, that placement with the Defendant would be a negative aspect in the weighing of the positives and negatives."

These beliefs cannot be distinguished from the "tender years presumption" that was abolished in 1977 by an amendment to N.C. Gen. Stat. § 50-13.2(a) (2003). It has been the law for 30 years that a court may not base a custody decision, as between parents, on any presumption in favor of either the mother or the father, but instead must focus only on the best interests of the child as determined from the actual evidence before the court. We reverse and remand so that the trial court may make a "best interests" determination based on the evidence presented at trial.

## Facts

The plaintiff mother and defendant father were married in June 1998, but separated in June 2002. They had one child, M.G., who was born in January 2002. On 21 August 2002, the mother initiated this action by filing a complaint seeking temporary and permanent custody of M.G. The father responded with an answer and counterclaim also seeking permanent custody of M.G. The case was heard over three days: 28 January 2004, 5 April 2004, and 24 May 2004. On 15 July 2004, the district court entered its order making detailed findings of fact.

With respect to the mother, the trial court found that she is a single mother raising M.G. as well as an older son A.V., a child from a previous marriage. She depends upon her family to provide care for her children, such that her mother has been the primary caregiver for A.V. and is "established as a daytime and extended caregiver" for both A.V. and M.G. Along with a strong extended family, the mother also has a strong support system in her church.

The trial court found that, throughout her life, the mother has consistently been diagnosed with an adjustment disorder and has sought and received long-term treatment for "depression and [a] psychological disorder." The court found that although the mother has shown an ability to overcome her psychological problems in the work environment, she "is self-centered, has difficulty controlling her temper, has difficulty modifying her behavior appropriately for the occasion, has difficulty controlling her emotions, and that she depends upon her extended family to provide the family structure instead of the other way around."

Further, the court found that the mother "does not comprehend or does not care about the consequences of her actions" and "has been involved in excessive confrontations throughout her lifetime." The court found that, on at least one occasion, she cursed at a doctor while at work in the hospital. More significantly, the court found that the mother has on occasion: "[s]lapped or backhanded her older son, [A.V.]"; slapped the defendant father; "[k]icked the Defendant between the legs in an angry manner"; "forked the Defendant in the hand in an angry manner"; and slapped her first husband. The trial court specifically noted that "any one of the aforementioned actions could constitute a criminal assault" and that "the slapping or backhanding of the older son, [A.V.], would justify a petition for child abuse or child neglect."

GREER v. GREER

[175 N.C. App. 464 (2006)]

With respect to the mother's ability to parent, the trial court found that the mother's "attitude or adjustment disorder could hamper her ability to parent [M.G.], especially as this child grows and develops into a young woman who begins to think for herself and develops her own attitude." The court stressed that the mother must modify her behavior in order to be able to handle mother-daughter conflicts in an appropriate manner, but ultimately stated: "The Court is unable to determine whether the Plaintiff will be able to deal with these conflicts in an appropriate manner in the future as the child matures."

With respect to the father, the court found that he voluntarily left the marital residence, thus removing himself from the mother and his child. According to the trial court, the father has a relatively secure life in which he appears well-adjusted and exhibits no signs of a psychological disorder. The trial court found, however, that the "Defendant's maturity level is not age appropriate at times," based on the fact that he "occasional[ly] physically and verbally picked at the Plaintiff" and on occasion "called her fat."

Although the father has a stable work environment as a farmer, which he enjoys, the nature of his profession requires long hours during a considerable portion of the year. The court noted that, like the mother, the father has a substantial family support system close by to help with M.G. Although the father's girlfriend had also been helping the father with M.G., the court observed that her future relationship status with the father is unclear. The trial court also found that the father "has not established an independent track record to demonstrate his parenting abilities" without the assistance of his girlfriend. On the other hand, the court recognized that the father has had a very limited opportunity to parent because he has had to endure "a difficult environment in order to obtain visitation with M.G" due to obstacles the mother placed in his way.

Based on these findings of fact, together with findings regarding the general relationship between a mother and a child, discussed in detail below, the trial court ultimately concluded that both the mother and father were fit and proper persons for custody. The court determined that "the best interests of the minor child would be promoted by awarding joint legal custody and split physical custody between the parties." The father filed a timely appeal to this Court.

Discussion

On appeal, the father contends that, in determining custody, the trial court erred by making the following two findings of fact:

16. . . . The Court takes judicial, personal notice of the natural bond that develops between infants and a mother, especially when the mother breast-feeds the infant.

. . . .

33. The Court believes and finds that by the very nature of the age and gender of the minor child (28-month-old female), as it relates to the Defendant, that placement with the Defendant would be a negative aspect in the weighing of the positives and negatives.

Further, that the natural law of birthing and breast-feeding gives the mother a distinct advantage for the opportunity to parent a newborn. With regard to the foregoing statement, the Court offers the following statement:

". . . [I]t seems to me that when you're looking at the best interest of the child, you're looking at parenting. That we talk about and we place emphasis on parents' ability to parent and it struck me in thinking about this case this morning that it seems to me that parenting is not an ability so much as it is a desire.

And that desire is broken down and you can categorize in general terms to say a desire to meet the needs of the minor child. And we've heard that, and we've heard that in our arguments. But when you break that down, what it means is a desire to spend time with the child. It means a desire to discipline the child so that when the child grows up, he or she knows what the boundaries are; a desire to cook and clean for the child; a desire to take them to parties; a desire to cry with them when they are unhappy; a desire to laugh with them when they are happy; a desire to kiss away their hurts; to get along with the other parent so that child does not have to choose one over the other.

Parenting is a lifetime responsibility, and, as it relates to Mrs. Greer and Mr. Greer, I think your parents can tell you that and the fact that they have sat in this courtroom since September, demonstrates that they understand that responsibility.

For the two (2) of you, this responsibility is just [the] beginning. As it relates to younger children in a domestic dispute, the

**GREER v. GREER**

[175 N.C. App. 464 (2006)]

law of nature dictates that early in the life of a child, the mother has a distinct advantage in the opportunity to care for that child. The mother carries the child; she must withstand the vigors and the rigors of the nine (9) months; she must endure the pain of labor and delivery. The man can only look on with sympathy, excitement and encouragement, also understanding when the mother's hormones change. Normally, when the child is first born, the doctor places the child on the mother's stomach and then in her arms.

The man may be allowed to hold the child briefly during that interlude. If the mother is breast-feeding, all the man can do is get up, bring the baby to bed for her and take the child back when the child is finished.

During the first two (2) years, at best, the man has very few opportunities to parent a child, especially when the parties separate. It is almost impossible to demonstrate those skills, especially when the child stays with the mother and especially as in this case I find the mother at times blocks attempts to visit."

The father argues: (1) the two findings of fact effectively amount to an application of the tender years presumption that was abolished by N.C. Gen. Stat. § 50-13.2(a), and (2) the assertions contained in those findings of fact are not a proper subject for judicial notice. We agree.

Early common law first recognized a maternal preference in custody disputes concerning illegitimate children, with the mother having a right to custody unless it was clearly and manifestly in the best interest of the child to award custody to another person, including the father. 3 Suzanne Reynolds, *Lee's North Carolina Family Law* § 13.6b(b)(ii), at 13-29 (5th ed. 2002). This maternal preference was eventually extended to all custody disputes involving young children. Courts presumed "that, at least for a child of tender years, the mother served the best interest of the child"—a doctrine that became known as "the tender years presumption." *Id.* § 13.6b(b)(iii), at 13-30. This presumption "appears to have shaped North Carolina custody law for most of the twentieth century." *Id.* § 13.6b(b)(iii), at 13-31.

The presumption was described by our Supreme Court:

[I]t is said: "It is universally recognized that the mother is the natural custodian of her young. . . . If she is a fit and proper person to have the custody of the children, other things being equal, the mother should be given their custody, in order, that the children

may not only receive her attention, care, supervision, and kindly advice, but also may have the advantage and benefit of a mother's love and devotion for which there is no substitute. A mother's care and influence is regarded as particularly important for children of tender age and girls of even more mature years."

*Spence v. Durham*, 283 N.C. 671, 687, 198 S.E.2d 537, 547 (1973) (quoting 2 Nelson, *Divorce and Annulment* § 15.09, at 226-29 (2d ed. 1961)), *cert. denied*, 415 U.S. 918, 39 L. Ed. 2d 473, 94 S. Ct. 1417 (1974). *See also In re King*, 11 N.C. App. 418, 419, 181 S.E.2d 221, 221 (1971) (affirming award of custody to mother in part because given "the tender age of said child, the welfare of the child, . . . would best be served by placing him in the temporary custody of his mother").

As, however, recognized by this Court in 1994, "[t]his 'tender years' doctrine is no longer the law in North Carolina." *Westneat v. Westneat*, 113 N.C. App. 247, 251, 437 S.E.2d 899, 901 (1994). In 1977, the General Assembly amended N.C. Gen. Stat. § 50-13.2 to eliminate any presumption in favor of either the mother or the father so that only a best interests of the child test would be applied. The statute now states in pertinent part:

An order for custody of a minor child entered pursuant to this section shall award the custody of such child to such person, agency, organization or institution as will best promote the interest and welfare of the child. In making the determination, the court shall consider all relevant factors including acts of domestic violence between the parties, the safety of the child, and the safety of either party from domestic violence by the other party and shall make findings accordingly. An order for custody must include findings of fact which support the determination of what is in the best interest of the child. *Between the mother and father, whether natural or adoptive, no presumption shall apply as to who will better promote the interest and welfare of the child.* Joint custody to the parents shall be considered upon the request of either parent.

N.C. Gen. Stat. § 50-13.2(a) (emphasis added). *See also* Reynolds, *supra* § 13.6b(c), at 13-32 ("Out of fear that the tender years presumption would remain the standard in practice, in 1977, the General Assembly underscored that the court was not to presume that either mother or father was the better custodian.").

Our Supreme Court has, relatively recently, re-emphasized that trial courts must decide custody as between the parents based solely

on the best interests of the child, which is to be determined from the actual facts without reference to any presumptions. In *Rosero v. Blake*, 357 N.C. 193, 581 S.E.2d 41 (2003), *cert. denied*, 540 U.S. 1177, 158 L. Ed. 2d 78, 124 S. Ct. 1407 (2004), the trial court had awarded custody to the father of an illegitimate child after applying the best interests test. The Court of Appeals reversed, holding that the presumption in favor of the mother survived the enactment of N.C. Gen. Stat. § 50-13.2(a) when the child at issue was illegitimate. *Rosero v. Blake*, 150 N.C. App. 250, 260, 563 S.E.2d 248, 256 (2002), *rev'd*, 357 N.C. 193, 581 S.E.2d 41 (2003). The Supreme Court, however, reversed yet again, holding that the statute abrogated the common law presumption in favor of the mother both as to legitimate and as to illegitimate children. *Rosero*, 357 N.C. at 207, 581 S.E.2d at 49. Instead, "the best interest of the child, illegitimate or legitimate, not the relationship, or lack thereof, between natural or adoptive parents, is the district court's paramount concern. For, as between natural or adoptive parents, '[t]he welfare of the child has always been the polar star which guides the courts in awarding custody.'" *Id.* at 207, 581 S.E.2d at 49-50 (quoting *Pulliam v. Smith*, 348 N.C. 616, 619, 501 S.E.2d 898, 899 (1998)). The Court emphasized:

> [T]he father's right to custody of his illegitimate child is legally equal to that of the child's mother, and, as dictated by section 50-13.2, if the best interest of the child is served by placing the child in the father's custody, he is to be awarded custody of that child.

*Id.* at 208, 581 S.E.2d at 50.

In this case, however, the trial court did not view the father as equal to the mother and did not evaluate the evidence independent of any presumptions in favor of the mother. Instead, the trial court used language in the order that cannot be distinguished from the abolished presumption and that is eerily reminiscent of language used in early cases applying the presumption such as *Spence*. The court in *Spence* held that "the mother is the natural custodian of her young" and "other things being equal, the mother should be given their custody, in order that the children may not only receive her attention, care, supervision, and kindly advice, but also may have the advantage and benefit of a mother's love and devotion for which there is no substitute." *Spence*, 283 N.C. at 687, 198 S.E.2d at 547. Similarly, the trial judge in the present case remarked that "the law of nature dictates that early in the life of a child, the mother has a distinct advantage in the opportunity to care for that child" and "that by the very nature of

the age and gender of the minor child (28-month-old female), as it relates to the Defendant, that placement with the Defendant would be a negative aspect in the weighing of the positives and negatives." These "findings," not based on the actual evidence of the case, cannot be meaningfully distinguished from the abrogated tender years presumption.

The trial court—and the mother on appeal—invoke the doctrine of "judicial notice" to justify the trial court's reliance on his view of "the natural law of birthing." Once, however, a presumption or doctrine has been abolished, a court does not have the authority to resurrect that doctrine under the guise of taking judicial notice of the assumptions underlying the doctrine.

Rule 201(b) of the North Carolina Rules of Evidence specifies that "[a] judicially noted fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." With respect to natural phenomena, our courts have been permitted to take notice of the fact it takes time for a hedge to grow four feet, *Gaffney v. Phelps*, 207 N.C. 553, 559, 178 S.E. 231, 234 (1934), and that pregnant women sometimes miscarry or have stillborn births, *State v. Hall*, 251 N.C. 211, 212, 110 S.E.2d 868, 869 (1959). Such facts are not subject to dispute.

Any subject, however, that is open to reasonable debate is not appropriate for judicial notice. *See, e.g., Hinkle v. Hartsell*, 131 N.C. App. 833, 837, 509 S.E.2d 455, 458 (1998) (reversing a trial court's award of primary custody to the mother when the court, in justification of its award, took judicial notice of criminal activity near the father's home without hearing any evidence on that issue). By enacting N.C. Gen. Stat. § 50-13.2(a), the General Assembly established that some of the personal beliefs recited by the trial court in this case are subject to debate in the custody context. In fact, the General Assembly reached the conclusion that such beliefs, regarding the advantages of a mother having custody of a young child, should not supplant analysis of the best interests of the child involved in the custody dispute. As a result, the trial court did not properly rely upon the principle of judicial notice when making findings of fact 16 and 33.

We note that instances may arise when findings as to the benefits of breast-feeding for an infant or evidence of a bond with a particular parent may be appropriate considerations by the trial court in a deter-

mination of the best interests of the child based on the factual evidence presented in a particular case. The record in this case, however, does not reflect specific evidence or findings as to the closeness of M.G. and her mother or a particular bond that exists between the two. Rather, here the trial court appears to rely on personal experience in concluding that a "natural bond . . . develops between infants and a mother especially when the mother breast-feeds the infant." Indeed, the trial court here found that plaintiff's adjustment disorder "could hamper her ability to parent [M.G.], especially as this child grows and develops into a young woman who begins to think for herself and develops her own attitude. . . . The Court is unable to determine whether the Plaintiff will be able to deal with these conflicts in an appropriate manner in the future as the child matures." We hold that the trial court's findings in the instant case as to natural law and breast-feeding were not supported by evidence in the record and were not appropriate matters for judicial notice.

If findings of fact 16 and 33 are omitted, the order is left with findings that raise significant questions regarding both the fitness of the mother to have custody and whether split physical custody is in the best interest of M.G. The trial court may still determine, on remand, that joint legal custody with split physical custody is in the best interests of M.G., but, in light of the trial court's detailed, negative findings with respect to the mother, we cannot conclude that the trial court would necessarily have made the same determination in the absence of the beliefs included in findings of fact 16 and 33. When a court makes its findings of fact under a misapprehension of the law, the affected findings must be set aside and the case remanded so that the remaining evidence may be considered in its "true legal light." *McGill v. Town of Lumberton*, 215 N.C. 752, 754, 3 S.E.2d 324, 326 (1939). Accordingly, we reverse and remand so that the trial court may make a determination of custody in accordance with the best interests of M.G. based on the actual evidence presented at trial.

Reversed and remanded.

Judges HUNTER and McCULLOUGH concur.