DIXON v. GORDON

[223 N.C. App. 365 (2012)]

JAMES O. DIXON, II, Plaintiff v. JENNIFER BROOKE GORDON (now McLeod), Defendant

No. COA12-660

(Filed 20 November 2012)

**1. Child Custody and Support—tender years doctrine—not applied**

The trial court did not err in a child custody case by awarding mother primary custody. The trial court did not rely on evidence which supported the idea that mothers make better caregivers to young children or apply the tender years doctrine in awarding mother primary custody.

**2. Child Custody and Support—temporary order—not prejudicial at permanent hearing**

The trial court did not err in a child custody case by treating the temporary custody arrangement as the "status quo" and putting the burden on father to prove why the temporary order should not simply become the permanent order. There was no evidence that the trial court incorrectly considered the temporary order.

**3. Child Custody and Support—decision-making authority—primary legal custody—no abuse of discretion**

The trial court did not abuse its discretion in a child custody case by awarding mother primary decision-making authority thereby depriving father of any ability to share in the major decision-making with regard to the child. The trial court specifically determined that joint custody was not in the child's best interest.

**4. Child Custody and Support—evidence—findings of fact—reweigh evidence**

The trial court did not err in a child custody case by failing to consider specific evidence which father deemed important to the custody determination and making corresponding findings of fact. Father's argument essentially asked the Court of Appeals to reweigh the evidence, which it could not do.

**5. Attorney Fees—child custody and support—findings of fact insufficient**

The trial court erred by awarding attorney fees in a child custody case by failing to make findings of fact supported by evidence that father did not have sufficient means to employ counsel

and that mother had sufficient disposable income to pay father's attorneys fees.

Appeal by plaintiff and defendant from order entered 2 May 2011 by Judge Christy T. Mann in Mecklenberg County District Court. Heard in the Court of Appeals 22 October 2012.

*Hamilton Stephens Steele & Martin, PLLC, by Amy S. Fiorenza, for plaintiff-appellant.*

*Casstevens, Hanner, Gunter, Riopel & Wofford, P.A., by Dorian H. Gunter, for defendant-appellee/cross-appellant.*

MARTIN, Chief Judge.

Plaintiff-father James O. Dixon, II appeals from the permanent child custody order awarding primary physical and legal custody to defendant-mother Jennifer Brooke Gordon (now McLeod). Mother appeals from an order awarding father attorney's fees in the amount of $43,974. For the following reasons, we affirm in part, and reverse in part and remand.

The evidence at the permanent custody hearing tended to show that on 2 September 2009, a son, Adam, was born to the parties. The parties were not married at the time and have never been married. During mother's pregnancy she informed father that she no longer wanted to be in a relationship with him; however, the parties successfully communicated with each other regarding prenatal care, pediatricians, and other important considerations for the duration of the pregnancy.

Within two months of Adam's birth, father began to have overnight visits with Adam at his home. On one occasion in December 2009, father cared for Adam for approximately ten days while mother was on vacation. Father continued to care for Adam regularly through early 2010.

In February or March 2010, father learned that mother had resumed her relationship with Mullins McLeod, an attorney in Charleston, South Carolina. At this point, father hired an attorney. The parties agreed to mediate the custody dispute; however, before mediation could be scheduled, mother informed father that, from that point forward, father would only care for Adam every other weekend. This arrangement continued, over father's objection, until mother relocated to Charleston in April 2010.

A hearing was held to establish a temporary parenting arrangement (TPA) on 29 June 2010. The TPA awarded mother primary physical and legal custody of Adam. Father was granted weekend visitation three out of four weekends a month, one of these visits to occur in Charleston so that Adam would not need to travel for each visit. In carrying out the TPA, the transition between parents has been mostly uneventful. Adam is emotionally bonded and seems to feel secure with both parents.

In March 2011, a permanent custody hearing was held. The trial court found that mother has created a safe and loving environment for Adam in Charleston, where she regularly takes him to Gymboree, music class, the aquarium, museums, parks, and beaches. Mother employs several nannies who testified about their perceptions of mother as a parent; all reports were positive. The trial court found that mother is a pro-active parent, who considers what would make Adam's life better and takes action to make his life more fulfilling, whereas father's parenting style is more reactive in nature. The trial court also found that because mother and father do not have an ability to communicate with each other freely except with regard to surface issues, joint custody would not be in Adam's best interest. In its order, the trial court awarded primary physical and legal custody to mother, but noted that father is a fit and proper person to have visitation with Adam and granted father the same visitation outlined in the TPA order.

The trial court specifically ordered that both parties have complete access to school records and information, the right to participate in all school events, activities, and conferences, as well as the right to consult with teachers and school personnel. Both parties are to have access to all of Adam's medical records and the right to consult with Adam's physicians. Additionally, mother and father were ordered to share "any and all information pertinent to Adam including but not limited to information regarding Adam's general health, education, welfare and progress." The order specified, however, that mother has final decision-making authority regarding major decisions affecting Adam.

Father has been continuously employed by Bank of America since before Adam's birth. Father testified at the permanent custody hearing that he earns $82,000 a year at his job in addition to a yearly bonus, which works out to be between $50,000 and $60,000 a year after taxes. Father also owns a Christmas tree business and pumpkin patch, although these ventures were not profitable in the prior year.

Mother does not work outside of the home. She testified at the hearing that her net worth is forty million dollars. In connection with father's request for attorney's fees, the trial court made, *inter alia*, the following findings of fact:

> 46. Father is an interested party, acting in good faith, who does not have sufficient funds with which to employ and pay legal counsel to legal counsel [sic] to meet Mother on an equal basis. Father is entitled to a reasonable award of attorney's fees on the issue of child custody.
>
> . . . .
>
> 56. Considering the circumstances of this particular case, it is reasonable and appropriate that Mother pay $43,974 to [defendant's counsel's firm] to partially reimburse Father for the efforts on his behalf by Ms. Simpson in connection with this lawsuit.
>
> 57. Mother has sufficient funds to pay a reasonable award of attorney's fees in order for Father to employ counsel.

Both parties appeal.

On appeal, father challenges the trial court's award of permanent physical and legal custody to mother, arguing that the court abused its discretion by failing to award custody consistent with the best interests of the child because the trial court erroneously (1) applied the tender years presumption; (2) treated the temporary custody order as the "status quo"; (3) deprived father of any decision-making authority for the child; and (4) failed to consider all the evidence. Mother appeals the trial court's award of attorney's fees, arguing that the court abused its discretion by failing to find facts sufficient to support its award.

I.

"Absent an abuse of discretion, the trial court's decision in matters of child custody should not be upset on appeal." *Everette v. Collins*, 176 N.C. App. 168, 171, 625 S.E.2d 796, 798 (2006).

A.

[1] Father contends the trial court applied the tender years presumption in awarding mother custody because it allowed improper evidence which supported the idea that mothers make better caregivers to young children to be admitted in two forms: an affidavit from a psychologist/author and mother's own testimony. We disagree.

**DIXON v. GORDON**

[223 N.C. App. 365 (2012)]

The tender years doctrine was a legal presumption that benefitted mothers in custody disputes by giving mothers custody all other factors being equal, simply based on the fact that a "mother is the natural custodian of her young." *Spence v. Durham*, 283 N.C. 671, 687, 198 S.E.2d 537, 547 (1973) (citation and internal quotation marks omitted), *cert. denied*, 415 U.S. 918, 39 L. Ed. 2d. 473 (1974). Today this presumption has been specifically abolished by statute in N.C.G.S. § 50-13.2(a), which states "[b]etween the mother and father, whether natural or adoptive, no presumption shall apply as to who will better promote the interest and welfare of the child." N.C. Gen. Stat. § 50-13.2(a) (2011); *see also Rosero v. Blake*, 357 N.C. 193, 208, 581 S.E.2d 41, 49-50 (2003) (holding that tender years doctrine no longer applies in cases involving an illegitimate child). Evidence submitted by the parties that incidentally supports the now-defunct presumption is not erroneous; it is error, however, for the court to use that evidence to apply the presumption that custody with the minor child's mother will necessarily promote the child's best interest.

This Court has held that the tender years doctrine was erroneously applied in a case where "the trial court did not view the father as equal to the mother and did not evaluate the evidence independent of any presumptions in favor of the mother," but instead, "the trial court used language in the order that cannot be distinguished from the abolished presumption and that is eerily reminiscent of language used in early cases applying the presumption such as *Spence*." *Greer v. Greer*, 175 N.C. App. 464, 471, 624 S.E.2d 423, 428 (2006). For example, the trial court in *Greer* remarked that "the law of nature dictates that early in the life of a child, the mother has a distinct advantage in the opportunity to care for that child." *Id.* In reversing the custody order, this Court found that "these 'findings,' [were] not based on the actual evidence of the case," and therefore, "cannot be meaningfully distinguished from the abrogated tender years presumption." *Id.* at 472, 624 S.E.2d at 428.

Here, the court made no such findings. Rather, father points to the affidavit submitted by John K. Rosemond, a psychologist and author specializing in parenting and family issues, which stated that he is generally opposed to overnight visitations with the non-custodial parent based on a young child's attachment to its primary caretaker, who he goes on to specify is "usually, but not always, the mother." Rosemond opined that visitation with an infant or young toddler should ideally occur in their primary home environment because young children commonly experience separation anxiety

and occasionally reject attempts by their father to parent them. Father also points to mother's own testimony, where she testified that "we have a special bond with being a mother. He grew inside of me, he was in my womb. I think there's something special to that . . . . I feel like that there is a special bond between a mother and a child."

There is nothing in the record to suggest that the trial court relied on this evidence in particular in awarding mother primary custody or that the court applied the tender years presumption. In fact, the trial court noted in Finding of Fact 25 that Adam is securely bonded to father. Therefore, this argument is overruled.

## B.

**[2]** Father next contends the trial court erred by treating the temporary custody arrangement as the "status quo" and putting the burden on him to prove why the temporary order should not simply become the permanent order.

"[I]f a child custody or visitation order is considered temporary, the applicable standard of review for proposed modifications is best interest of the child, not substantial change in circumstances." *Simmons v. Arriola*, 160 N.C. App. 671, 674, 586 S.E.2d 809, 811 (2003) (citation and internal quotation marks omitted). Thus, there is no burden placed on either parent. In determining the best interests of the child, it is not erroneous to consult the TPA. *See Raynor v. Odom*, 124 N.C. App. 724, 728, 478 S.E.2d 655, 657 (1996). In fact, "[w]hen a trial judge is attempting to evaluate what is in the best interests of the child . . . it is an undue restriction to prohibit the trial judge's consideration of the history of the case on record." *Id.*

Here, the trial court assured father that the permanent custody hearing was "not going to be prejudicial to either side" and that it was going to start from "scratch" or "ground zero." The trial court further promised father, "all I can tell you is, I'm not going to hold [the TPA] against you; that I will have a hearing in which there will be a clean slate." There is no evidence that this was not the case. Therefore, this argument is overruled.

## C.

**[3]** Father also contends the trial court abused its discretion by depriving father of any ability to share in the major decision-making with regard to Adam. Specifically, father points to *Diehl v. Diehl*, 177 N.C. App. 642, 648, 630 S.E.2d 25, 29 (2006), in which this Court reversed a custody order, holding the findings of fact were insuffi-

cient to award father joint legal custody but deprive him of all decision-making authority.

This case differs in a significant way; here, the trial court awarded mother primary legal custody in its order. The trial court specifically determined that joint custody was not in Adam's best interest in one of its conclusions of law. This conclusion was based on its finding that mother and father cannot communicate effectively except with regards to surface issues; thus, the trial court named mother as the party with the final say regarding "major" decisions involving Adam, the implication being that this power is to be used in the event of a disagreement between mother and father.

Furthermore, the permanent custody order in this case explicitly orders that each parent have access to all school records, teachers, medical records, doctors and healthcare professionals, as well as any and all information related to the child's health, education, welfare, and overall progress. The order encourages father to actively participate and be informed and involved in all aspects of Adam's life. Thus, this argument is overruled.

## D.

[4] Father further contends the trial court erred by failing to consider specific evidence which he deems important to the custody determination and make corresponding findings of fact. In particular, father contends the trial court should have made findings which address "what [it is] about Mother or Charleston that make that environment more desirable[.]" Father also argues that the trial court was "enamored" with mother because she is "an attractive female . . . worth $40 million, and a celebrity" and therefore overlooked other "facts," such as mother making "selfish" decisions for Adam and marrying a man "with whom she had a shaky past," which, in turn, ended after "5 ½ short months."

The trial court is vested with broad discretion in child custody cases, and thus, the trial court's order should not be set aside absent an abuse of discretion. *See Pulliam v. Smith*, 348 N.C. 616, 624-25, 501 S.E.2d 898, 902 (1998). "[T]he trial court need not make a finding as to every fact which arises from the evidence; rather, the court need only find those facts which are material to the resolution of the dispute." *Witherow v. Witherow*, 99 N.C. App. 61, 63, 392 S.E.2d 627, 629, *reh'g granted in part*, 327 N.C. 438, 375 S.E.2d 698 (1990), *aff'd per curiam*, 328 N.C. 324, 401 S.E.2d 362 (1991).

Contrary to father's assertion, the trial court made relevant findings regarding Adam's life in Charleston, including that mother's home was baby-proofed and thereby safe for Adam, that mother took advantage of various attractions in Charleston, including the beach, parks, and aquarium, and that Adam is able to have play dates with friends and family members in Charleston. Father's argument, therefore, seems to be nothing more than a "request that we reweigh the evidence and reach a different conclusion on the facts than that deemed appropriate by the trial court." *Underwood v. Underwood,* _____ N.C. App. _____, 720 S.E.2d 460 (2011) (unpublished) (citation and internal quotation marks omitted). Accordingly, "[w]e are simply not permitted to act in accordance with [father's] request under the applicable standard of review." *Id.* Consequently, this issue is overruled.

II.

**[5]** Mother contends the trial court abused its discretion by failing to make findings of fact supported by evidence that father did not have sufficient means to employ counsel and that she had sufficient disposable income to pay father's attorney's fees.

In an action for child custody, "the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit." N.C. Gen. Stat. § 50-13.6 (2011). "A party has insufficient means to defray the expense of the suit when he or she is unable to employ adequate counsel in order to proceed as litigant to meet the other spouse as litigant in the suit." *Taylor v. Taylor,* 343 N.C. 50, 54, 468 S.E.2d 33, 35 (citation and internal quotation marks omitted), *reh'g denied,* 343 N.C. 517, 472 S.E.2d 25 (1996).

In *Atwell v. Atwell,* 74 N.C. App. 231, 238, 328 S.E.2d 47, 51 (1985), this Court found that a child custody order was not in compliance with the statutory requirements of N.C.G.S. § 50-13.6 when the trial court merely found that the wife was an interested party acting in good faith who had insufficient means to defray the expenses of the suit. The Court stated that "this 'finding' is, in reality, a conclusion of law" which is unsupported by findings of fact. *Id.* Thus, the Court found the award of attorney's fees to be an abuse of discretion and instructed, "[o]n remand, the court must make findings to support the conclusion that the wife does not have the means to defray her legal expenses, that is, it must find she is unable to employ adequate counsel in order to proceed as litigant to meet the other spouse as litigant." *Id. See also Cameron v. Cameron,* 94 N.C. App. 168, 172, 380

S.E.2d 121, 124 (1989) (vacating the order awarding attorney's fees to plaintiff and remanding for more findings of fact where Court found that it had "little more" before it than a "bald statement that a party has insufficient means to defray the expenses of the suit").

Here, the only findings of fact were that "father . . . does not have sufficient funds with which to employ and pay legal counsel to legal counsel [sic] to meet Mother on an equal basis." Although information regarding father's gross income and employment was present in the record in father's testimony, there are no findings in the trial court's order which detail this information[1]. We believe that because the findings in this case contain little more than the bare statutory language, the order is insufficient to support an award of attorney's fees. Therefore, we remand so that the trial court can make additional required findings of fact regarding father's means to employ counsel.

Affirmed in part; reversed in part and remanded.

Judges STEELMAN and ERVIN concur.

---

1. The necessity for such detailed financial findings is rare for an order dealing solely with child custody; most orders disposing of issues of child custody and attorney's fees also dispose of alimony or child support issues, which require a determination of the supporting and dependent spouse and necessarily involve delving more closely into the finances of each party. *See* N.C. Gen. Stat. §§ 50-13.4(c)(1), 50-16.6A (2011). Therefore, more specific findings of fact are normally present in cases where attorney's fees are awarded for actions involving child custody.