HUNTER, JR., ROBERT N., Judge.
 

 Alicia Heller-Nguyen ("Defendant") appeals following an order on Tu N. Nguyen's ("Plaintiff") motion for reappointment of a Parenting Coordinator, Parenting Coordinator Sydney Batch's motion for an order terminating her parenting coordinator appointment and awarding her past due fees, and Parenting Coordinator Sydney Batch's Notice of a Determination that Requires a Court Hearing. On appeal, Defendant contends (1) the trial court did not have jurisdiction to modify child support, (2) erred in reappointing Parenting Coordinator Batch, and (3) erred in offsetting Plaintiff's child support arrears. We affirm in part and remand in part.
 

 I. Factual and Procedural History
 

 Plaintiff and Defendant married on 19 June 1993. They had four children during their marriage, three boys and one girl, ages eleven, twelve, fifteen, and seventeen. They separated on 31 October 2010.
 

 Thereafter, Defendant filed a domestic violence protective order ("DVPO") against Plaintiff on 12 November 2010. The DVPO gave Defendant sole custody of the minor children and prohibited Plaintiff from contacting his children "whatsoever ... at any time."
 

 On 22 November 2010, Plaintiff filed a verified complaint for joint legal custody and primary physical custody of the children. He alleged the children's best interests would be best served by having the trial court award him temporary and permanent physical custody, with Defendant having visitation rights. Additionally, he moved to have Defendant submit to a psychiatric evaluation.
 

 On 10 January 2011, Defendant filed a verified answer and raised counterclaims for child custody and child support. On 29 January 2011, Defendant filed a verified amended answer and amended counterclaims for child custody, child support, equitable distribution, post separation support, alimony, and moved to have the trial court impose a temporary restraining order on Plaintiff to prevent him from transferring assets, and moved to have Plaintiff submit to a psychiatric evaluation. On 24 February 2011, Plaintiff filed a reply
 and objected to Defendant's motion for a temporary restraining order and psychiatric evaluation.
 

 On 25 August 2011, the trial court issued a temporary child custody order and found it was in the children's best interests to award the parties joint legal custody and to award Plaintiff physical custody every Wednesday night, and every other Thursday, Friday, and Saturday. The trial court gave Defendant physical custody on all other days and nights. The trial court ordered both parties to undergo psychiatric evaluations.
 

 On 11 October 2011, the trial court appointed Helen Oliver to serve a two-year parenting coordinator term. On 23 December 2011, Plaintiff and Defendant divorced. On 23 July 2012, Parenting Coordinator Oliver moved to be relieved from her duties because Plaintiff failed to pay her for her services.
 

 On 24-25 September 2012, the trial court heard Plaintiff on his complaint and Defendant on her counterclaims. After hearing the testimony of several witnesses and reviewing the evidence, the trial court issued a 27 March 2013 order and found it was in the children's best interests to award the parties joint legal custody. The trial court gave Defendant residential and primary physical custody and gave Plaintiff secondary custody with visitation rights set out in the order. The trial court ordered Plaintiff to pay $2,740.94 on the fifth day of every month as temporary child support, and found him to be in arrears of $7,705.00. The trial court ordered Helen Oliver, or a substitute, to continue serving as a Parenting Coordinator.
 

 On 11 April 2013, the trial court issued an order awarding Defendant $2,982.00 per month in alimony. Further, the trial court found Plaintiff was in $74,550.00 of alimony arrears.
 

 On 8 May 2013, the trial court amended its 27 March 2013 order, corrected typographical errors, and recalculated Plaintiff's arrears based upon medical expenses he paid without being reimbursed. Plaintiff's child support obligation remained the same at $2,740.94 per month.
 

 On 29 August 2013, Plaintiff filed a verified motion to modify child support and alimony. He alleged, "there has been a substantial change in circumstances warranting a reduction of [his] child support obligation and his alimony obligation in that: [his] business and source of income ... has received a substantially decreased revenue from two major customers ... which was in no way foreseeable." Further, his business, Healthy Home Insulation, Inc., took on wage and tax expenses, which decreased his income.
 

 On 13 March 2014, the trial court entered a consent order and appointed Sydney Batch to serve as Parenting Coordinator for one year. On 18 June 2014, Parenting Coordinator Batch moved to terminate her appointment because "Defendant has never been able to pay the initial retainer for parenting coordination services," and "[t]o date Defendant has only been able to make one payment of $500.00."
 

 On 25 June 2014, Plaintiff filed a verified motion to modify child custody. He alleged "there has been a substantial change in circumstances
 affecting the welfare of the minor children warranting a modification of the [children's] custodial arrangements." He alleged the following,
 
 inter alia:
 

 A. The parties agreed to the appointment of Sydney Batch as Parenting Coordinator. Ms. Batch has been in the case since approximately March 13, 2014. Ms. Batch has tried to arrange for the engagement of counselors or therapists to assist with the rehabilitation of Plaintiff's relationship with [his child], which has been alienated and destroyed by Defendant and, upon information and belief, Defendant's mother. Ms. Batch has also attempted to arrange for [two of the other children] to see a counselor. Ms. Batch has researched and recommended counselors and therapists for the parties to consider and approve, but Defendant has found an excuse as to why each counselor should not be used. Plaintiff believes that Defendant does not want the children to see counselors or therapists. Upon information and belief, Defendant has threatened to sue at least one of the therapists if he met with the children.
 

 B. Defendant's behaviors and attitudes towards Plaintiff are toxic, hostile, aggressive, and full of anger, and the intensity of their behaviors and attitudes has grown since the entry of the Custody Order. This has had a direct impact on the minor children and their relationship with Plaintiff.
 

 Plaintiff alleged the 8 May 2013 amended child custody and child support order "does not serve the minor children's best interests" because "[custody] [e]xchanges need to be as few as possible, and the minor children need consistent time and more time with their father." He asked the trial court to modify the 8 May 2013 custody order to give him more time with the children. This motion was made in addition to Plaintiff's 29 August 2013 motion to modify child support.
 

 On 20-22 August 2014, the trial court heard the parties on Plaintiff's 29 August 2013 motion to modify child support and alimony, and his 25 June 2014 motion to modify child custody. Plaintiff argued to reduce child support and alimony based upon a substantial change in circumstances. The trial court did not immediately enter an order following the hearing.
 

 On 15 September 2014, Parenting Coordinator Batch filed, pursuant to N.C. Gen.Stat. § 50-97, Wake County Domestic Form 26, "Parenting
 Coordinator's Notice of Determination that Requires a Court Hearing," with the trial court. In the sworn form, Parenting Coordinator Batch " determined that [she] [was] not qualified to address or resolve certain issues in the case," specifically:
 

 1. The ordering of reunification therapy and appointment of a reunification therapist for [two] minor children....
 

 2. The ordering of therapy and appointment of therapists for [the four] minor children....
 

 3. The ordering of communication between the parties via the Our Family Wizard website.
 

 4. The modification of the Amended Child Custody and Child Support Order to allow for a change of Wednesday drop-off time.
 

 Parenting Coordinator Batch requested the trial court resolve these issues.
 

 On 3 November 2014, Plaintiff moved to reappoint Parenting Coordinator Batch for "at least another two years." He alleged the following:
 

 8. This case has a long and tortuous history. Defendant's behaviors and attitudes towards Plaintiff are toxic, hostile, aggressive, and full of anger, and, upon information and belief, spill over into her parenting and the children's behavior, emotions, and attitudes suffer as a result. The children's mental and emotional wellbeing hangs in the balance, and they are under a tremendous amount of stress while residing with Defendant.
 

 9. Defendant has successfully alienated [two of the four children] from Plaintiff. Plaintiff has not seen [these two children] in over 10 months, and ... 6 months [respectively]....
 

 11. As a result of Defendant's behaviors, the parties have had to employ therapists for each child and [a] reunification therapist so that [two of the children] can be reunified with Plaintiff....
 

 13. Ms. Batch's services and judgment have been required throughout her appointment. Without her involvement, it is highly unlikely that the reunification process would
 be in its current position; additionally, it is highly unlikely that the children would be as active as they are in therapy.
 

 14. This case is a "high conflict case" within the meaning of N.C. Gen.Stat. § 50-90....
 

 17. It would serve the children's best interest for this Court to reappoint Ms. Batch as parenting coordinator for at least another two years, so that Ms. Batch can continue to monitor the children's mental and emotional well being and continue to assist the children in improving and maintaining their relationship with [Plaintiff].
 

 18. The parties are able to pay the cost of a parenting coordinator. The parties should be ordered to pay the costs of a parenting coordinator as deemed appropriate and fair by the Court.
 

 On 4 November 2014, Parenting Coordinator Batch filed a verified motion to terminate
 her appointment and collect her past due fees. According to Parenting Coordinator Batch, Defendant stated she could only "afford to pay $80.00 per month" towards her outstanding balance of parenting coordinator fees, even though Plaintiff paid Defendant "over $25,000.00 in the past two months." Parenting Coordinator Batch asked the trial court to remove her as parenting coordinator, order Defendant to pay the past due fees, and sought "any other relief that the Court deems just and proper."
 

 On 6 March 2015, the trial court issued an order on Plaintiff's motions to modify child support and child custody. The trial court found a substantial change in circumstances that affects the children's best interests and warranted a modification of Plaintiff's child support obligation. Further, the trial court found "Defendant was employed by Wake County in its EMS department" and voluntarily quit her job during litigation. The trial court found Plaintiff sold his assets in Healthy Home Insulation, Inc. in July 2014 and began working for Healthy Home's purchaser. The trial court found Plaintiff's gross monthly income decreased by 40-50% and his reasonable monthly expenses including child support were $4,565.00. The trial court found Plaintiff paid Defendant's parenting coordinator fees, totaling $5,382.50. The trial court made the following conclusions of law,
 
 inter alia:
 

 1. This Court has personal and subject matter jurisdiction to enter this Consent Order.
 

 2. Each party has the present ability to comply with the provisions of this Order.
 

 3. Since the entry of the [11 April 2013] Alimony Order, there has been a substantial change in circumstances warranting a modification of Plaintiff's alimony obligation set forth herein, and said modification is [in] in the minor child's best interests.
 

 4. Since the entry of the [8 May 2013 Amended] Child Support Order, there has been a substantial change in circumstances warranting a modification of Plaintiff's child support obligation as set forth herein, and said modification is in the minor's best interests.
 

 Based upon the substantial change in circumstances, the trial court reduced Plaintiff's alimony obligation to $900.00 per month, and using Worksheet B, reduced his child support obligation to $1,802.46 per month. The trial court concluded Plaintiff's child support arrears totaled $59,826.42, and his alimony arrears totaled $73,407.72.
 

 On 10 March 2015, the trial court heard the parties on Plaintiff's motion for reappointment of a parenting coordinator, and Parenting Coordinator Batch's "Notice of Determination that Requires a Court Hearing" to terminate her services, collect past fees owed to her by Defendant, to order therapy, appoint therapists, order the parties to use the Our Family Wizard website, and change the custody order to allow for Wednesday drop off times. On 11 June 2015, the trial court issued an order on Plaintiff's motion and Parenting Coordinator Bach's motion. The trial court made the following findings of fact and conclusions of law,
 
 inter alia:
 

 18. This case is a complex custody case which has a long, unfortunate history of extremely high conflict and domestic violence. The Court is concerned that the stress and discord between the parties will have a lasting negative affect on the minor children....
 

 23[-26]. [Each of the four children has been assigned a therapist].
 

 37. Defendant refused to sign a release for the PC to speak with Defendant's therapist.
 

 38. Both parties have been inconsistent in bringing the minor children to therapy for scheduled appointments.
 

 39. Defendant has threatened mental health providers with legal action if they saw the children.
 

 40. It is unclear whether Defendant sincerely desires the minor children to have a productive and healthy relationship with Plaintiff.
 

 41. When the PC was appointed, Defendant followed most of the PC's directives. Defendant does not abide by some of the PC's decisions, and the Court considered issuing a show cause [sic] to Defendant
 from the bench due to her lack of compliance. Defendant has obstructed the therapy process and compounded the problems in this case by refusing to sign releases or by revoking her consent for therapists to speak with one another and/or the PC. Defendant has at times been rude, hostile, and uncooperative in her communications with the PC and other mental health providers. Defendant has not made any progress in deescalating the conflict between the parties, and Defendant believes that at times the PC has been rude, hostile, and biased in her communications with her.
 

 42. Plaintiff wants a relationship with his children, but his efforts are and continue to be frustrated by Defendant. Plaintiff has made progress in understanding the need for therapy for his children, and he has been cooperative with the therapists involved in this case. He has signed all releases requested of him....
 

 46. The PC does not have any impairment which would prohibit her from communicating effectively with either party, and each party has the ability to participate with the PC. There is no indication of favoritism or prejudice for or towards either party by the PC in her interactions with the parties and decisions in this case, and there is certainly no indication that the PC is biased in any way based upon who is paying her fee....
 

 48. The PC's appointment did not expire prior to the hearing, and the appointment should be extended via reappointment as set forth below....
 

 50. Defendant has failed to pay her share of the PC's fees. She owes the PC $5,225.86. Plaintiff is willing to pay Defendant's share of the PC's fees so long as he is
 credited, dollar for dollar, with each payment he makes on her behalf as a credit against his outstanding child support arrearage of approximately $30,000.00.
 

 51. Defendant received a lump-sum payment from Plaintiff in the amount of $25,000[.00] in the Fall of 2014 for child support arrears, which she used to pay back taxes, living expenses, and health insurance....
 

 56. The Court has concerns about whether the minor children should remain in the primary custody of Defendant.
 

 CONCLUSIONS OF LAW
 

 3. This is a high conflict custody case.
 

 4. Good cause has been shown to the Court for reappointment of Sydney J. Batch as Parenting Coordinator as authorized by N.C. Gen.Stat. § 50-99(b).
 

 The trial court appointed Parenting Coordinator Batch for one year, and ordered the following:
 

 1. Plaintiff's Motion for Reappointment of Parenting Coordinator is GRANTED.
 

 2. The parties are operating under the following custody/visitation order: Amended Child Custody and Child Support Order entered on May 8, 2013....
 

 7.
 
 [Parenting Coordinator] General Authority:
 
 The authority of the Parenting Coordinator shall be as delineated herein and shall be limited to matters that will aid the parties in:
 

 A. Identifying disputed issues;
 

 B. Reducing misunderstandings;
 

 C. Clarifying priorities;
 

 D. Exploring possibilities for compromise;
 

 E. Developing methods of collaboration in parenting; and
 

 F. Complying with the Court's order of custody, visitation, or guardianship, including the Custody Order.
 

 8.
 
 Areas of Domain of General Authority:
 
 If a dispute arises concerning one of the following checked areas, the
 Parenting Coordinator has the authority to make minor changes to the custody/visitation order or to make decisions to resolve a dispute if the issue was not addressed in the custody/ visitation order:
 

 A. Transition time/pickup/delivery
 

 B. Sharing of vacations and holidays
 

 C. Method of pick up and delivery
 

 D. Transportation to and from visitation....
 

 17.
 
 Parenting Coordinator Fees:
 

 A. The parents have the financial capacity to pay for the Parenting Coordinator. The parties shall pay the Parenting Coordinator for all of her time and costs incurred in processing the case.... Nonpayment of fees may subject the nonpaying parent to prosecution for indirect contempt of Court for failure to abide by the Order....
 

 B. The Parenting Coordinator's hourly fee shall be paid as follows: Father shall pay 50% and Mother shall pay 50%....
 

 C. If one parent pays 100% of the Parenting Coordinator fee, then that party has a right of indemnification against the other parent up to the percentage allocation for which the other parent was responsible. This reimbursement may be enforced by contempt.
 

 D. If Plaintiff pays for Defendant's share of the Parenting Coordinator's fee, then each dollar paid by Plaintiff on behalf of Defendant shall reduce Plaintiff's child support arrearage by the amount so paid by Plaintiff on Defendant's behalf (since this is a direct benefit for the minor children)....
 

 28[-29]. Defendant shall not interfere with the reunification therapy for [the children] with Plaintiff....
 

 39. [I]f Plaintiff pays for Defendant's share of the Parenting Coordinator's fee or a therapist's fee, then each dollar paid by Plaintiff on behalf of Defendant shall reduce Plaintiff's child support arrearage by the amount so paid by Plaintiff on Defendant's behalf (since this is a direct benefit for the minor children), or Plaintiff may seek reimbursement from Defendant for said expense....
 

 41. The PC is hereby authorized to speak to all therapists, service providers, doctors, and any other professionals working with the Heller-Nguyen family....
 

 On 2 July 2015, Defendant filed her notice of appeal. On appeal, she contests the 11 June 2015 order. On 7 August 2015, Defendant moved pursuant to Rule 62(d) to stay all custody proceedings in this matter. On 25 September 2015, the trial court granted Defendant's motion to stay.
 

 II. Standard of Review
 

 "In a child custody case, the trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Unchallenged findings of fact are binding on appeal. The trial court's conclusions of law must be supported by adequate findings of fact."
 
 Peters v. Pennington,
 

 210 N.C.App. 1
 
 , 12-13,
 
 707 S.E.2d 724
 
 , 733 (2011) (citations omitted). "The trial court is vested with broad discretion in child custody cases, and thus, the trial court's order should not be set aside absent an abuse of discretion."
 
 Dixon v. Gordon,
 

 223 N.C.App. 365
 
 , 371,
 
 734 S.E.2d 299
 
 , 304 (2012) (citation omitted).
 

 III. Analysis
 

 Defendant contends (1) the trial court did not have jurisdiction to modify child support in its 11 June 2015 order (hereinafter "June Order"), (2) erred in reappointing Parenting Coordinator Batch, and (3) erred in offsetting Plaintiff's child support arrears. We affirm in part and remand in part.
 

 Defendant does not challenge the trial court's findings of fact, and therefore, the findings are binding on appeal.
 
 Peters,
 

 210 N.C.App. at 13
 
 ,
 
 707 S.E.2d at 733
 
 (citations omitted).
 

 A. Jurisdiction to Modify Child Support
 

 Defendant contends the trial court did not have jurisdiction to modify child support in the June Order because "[t]here was no motion before the trial court to modify child support." However, Defendant does not challenge the trial court's jurisdiction to modify child custody.
 

 Under North Carolina law, a child support order "may be modified or vacated at any time, upon [a] motion in the cause and showing of changed circumstances by either party or anyone interested subject to the limitations of [N.C. Gen.Stat. § ] 50-13.10." N.C. Gen.Stat. § 50-13.7(a) (2015). "Once 'the threshold issue of substantial change in
 circumstances has been shown' by a preponderance of the evidence, the trial court then
 'proceeds to follow the [North Carolina Child Support] Guidelines and to compute the appropriate amount of child support.' "
 
 McGee v. McGee,
 

 118 N.C.App. 19
 
 , 26,
 
 453 S.E.2d 531
 
 , 535-36 (1995) (citation omitted);
 
 see also
 

 Armstrong v. Droessler,
 

 177 N.C.App. 673
 
 , 675,
 
 630 S.E.2d 19
 
 , 21 (2006) (citation omitted). If a trial court follows this two-step process by making such a finding and calculating the child support obligation under the North Carolina Child Support Guidelines, then the trial court modifies the child support obligation.
 

 The record shows Plaintiff moved to modify child support on 29 August 2013. Through its 6 March 2015 order, the trial court granted Plaintiff's motion and changed his monthly child support obligation from $2,740.94 to $1,802.46. Plaintiff's child support obligation has remained unchanged and the June Order does not modify that amount. Notwithstanding the second issue concerning Plaintiff's child support arrears, we dismiss Defendant's contention because the trial court did not modify Plaintiff's child support obligation.
 

 Additionally, this Court observes there are no jurisdictional issues concerning modification of child custody. Prior to the June Order, Parenting Coordinator Batch, using Wake County Domestic Form 26, requested the trial court modify custody to allow for Wednesday drop off times. Parenting Coordinator Batch's request seems to contemplate the requirements set out by N.C. Gen.Stat. § 50-13.7 (2015), "Modification of order for child support or custody." This tends to raise unanswered questions as to whether a parenting coordinator can move as an interested party to modify a child support or child custody order under N.C. Gen.Stat. § 50-13.7, and whether standard forms like Wake County Domestic Form 26 can qualify as a "motion in the cause ... showing a changed circumstances." N.C. Gen.Stat. § 50-13.7(a). However, these concerns are not ripe for consideration in the case
 
 sub judice
 
 because "It is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein."
 
 Goodson v. P.H. Glatfelter Co.,
 

 171 N.C.App. 596
 
 , 606,
 
 615 S.E.2d 350
 
 , 358 (2005). Moreover, the trial court exercised its discretion under N.C. Gen.Stat. § 50-92(b), and gave Parenting Coordinator Batch authority to resolve disputes surrounding transition time, pickup, delivery, and transportation to and from visitation, instead of granting Parenting Coordinator Batch's motion as a motion to modify child custody.
 
 [1]
 

 See
 
 N.C. Gen.Stat. § 50-92(b) (2015)
 

 (" [T]he court may authorize a parenting coordinator to decide issues regarding the implementation of the parenting plan that are not specifically governed by the court order and which the parties are unable to resolve."). Accordingly, we dismiss Defendant's first contention.
 

 B. Reappointing Parenting Coordinator Batch
 

 Under North Carolina law, "the [trial] court may appoint a parenting coordinator at any time during the proceedings of a child custody action involving minor children ... if all parties consent to the appointment." N.C. Gen.Stat. § 50-91(a) (2015). If the parties do not consent to the appointment of a parenting coordinator, "the court may appoint a parenting coordinator ... upon entry of a parenting plan only if the court also makes specific findings that the action is a high-conflict case, that the appointment of the parenting coordinator is in the best interests of any minor child in the case, and that the parties are able to pay for the cost of the parenting coordinator." N.C. Gen.Stat. § 50-91(b) (2015). Alternatively, for good cause shown, the trial court may terminate or modify a parenting coordinator's appointment "upon motion of either party[,] at the request of the parenting coordinator, upon the agreement of the parties and the parenting coordinator, or by the court on its own motion." N.C. Gen.Stat. § 50-99(a) (2015).
 

 Here, the trial court made the required statutory findings: (1) this is a high conflict case; (2) reappointing Parenting Coordinator Batch serves the best interests of the children;
 

 and (3) the parties are able to pay for Parenting Coordinator Batch's services. Defendant contends the trial court found she is able to pay for Parenting Coordinator Batch's services solely because the trial court allowed Plaintiff to pay such fees on her behalf. This contention is not supported by the record. In the uncontested findings of fact, the trial court found "[t]he parties are able to pay the costs of the [Parenting Coordinator]," and noted Plaintiff paid Defendant a lump sum of $25,000.00 in Fall 2014, in addition to monthly alimony and child support payments. Further, the trial court voiced concern about Defendant's interference with her children's therapists, and her continued hostility towards Plaintiff and Parenting Coordinator Batch. Therefore, based upon the binding and uncontested findings of fact and the trial court's required statutory findings, we hold the trial court did not abuse its discretion in reappointing Parenting Coordinator Batch.
 

 C. Offsetting Child Support Arrears
 

 N.C. Gen.Stat. § 50-13.10 (2015), "Past due child support vested; not subject to retroactive modification; entitled to full faith and credit," protects vested child support arrears and defines when child
 support obligations become past due arrears. Section 50-13.10 sets out the following:
 

 (a) Each past due child support payment is vested when it accrues and may not thereafter be vacated, reduced, or otherwise modified in any way for any reason, in this State or any other state, except that a child support obligation may be modified as otherwise provided by law, and a vested past due payment is to that extent subject to divestment, if, but only if, a written motion is filed, and due notice is given to all parties either:
 

 (1) Before the payment is due or
 

 (2) If the moving party is precluded by physical disability, mental incapacity, indigency, misrepresentation of another party, or other compelling reason from filing a motion before the payment is due, then promptly after the moving party is no longer so precluded....
 

 (d) For purposes of this section, a child support payment or the relevant portion thereof, is not past due, and no arrearage accrues:
 

 (1) From and after the date of the death of the minor child for whose support the payment, or relevant portion, is made;
 

 (2) From and after the date of the death of the supporting party;
 

 (3) During any period when the child is living with the supporting party pursuant to a valid court order or to an express or implied written or oral agreement transferring primary custody to the supporting party;
 

 (4) During any period when the supporting party is incarcerated, is not on work release, and has no resources with which to make the payment....
 

 (e) When a child support payment that is to be made to the State Child Support Collection and Disbursement Unit is not received by the Unit when due, the payment is not a past due child support payment for purposes of this section, and no arrearage accrues, if the payment is actually made to and received on time by the party entitled
 to receive it and that receipt is evidenced by a canceled check, money order, or contemporaneously executed and dated written receipt. Nothing in this section shall affect the duties of the clerks or the IV-D agency under this Chapter or Chapter 110 of the General Statutes with respect to payments not received by the Unit on time, but the court, in any action to enforce such a payment, may enter an order directing the clerk or the IV-D agency to enter the payment on the clerk's or IV-D agency's records as having been made on time, if the court finds that the payment was in fact received by the party entitled to receive it as provided in this subsection.
 

 Id.
 

 In the instant case, the trial court found Parenting Coordinator Batch's services directly serve the best interests of the children. On appeal, this uncontested finding of fact is binding.
 

 N.C. Gen.Stat. § 50-95 states, "The parenting coordinator shall be entitled to reasonable compensation from the parties for services rendered and to a reasonable retainer." N.C. Gen.Stat. § 50-95(a) (2015). The trial court may appoint a parenting coordinator "contingent upon the parties' payment of a specific fee...." N.C. Gen.Stat. § 50-95(b) (2015). In the event the parties do not pay the parenting coordinator, "[t]he parenting coordinator shall not begin any duties until the fee has been paid."
 

 Id.
 

 In North Carolina, the child's welfare "is the 'polar star' in the matters of custody and maintenance, yet common sense and common justice dictate that the ultimate object in such matters is to secure support commensurate with the needs of the child and the ability of the father to meet the needs."
 
 Crosby v. Crosby,
 

 272 N.C. 235
 
 , 237,
 
 158 S.E.2d 77
 
 , 79 (1967) (citation omitted). To achieve this end, the trial court declared, "If Plaintiff pays for Defendant's share of the Parenting Coordinator's fee, then each dollar paid by Plaintiff on behalf of Defendant shall reduce Plaintiff's child support arrearage by the amount so paid by Plaintiff on Defendant's behalf (since this is a direct benefit for the minor children)." This is error to the extent that it allows Plaintiff to offset vested child support arrears owed to Defendant.
 
 See
 
 N.C. Gen.Stat. § 50-13.10(a) (2015).
 

 The trial court may, in its discretion, consider offsetting future advances on Plaintiff's child support obligations. The trial court is directed to review the procedural requirements and exceptions enumerated in N.C. Gen.Stat. § 50-13.10(a) (2015), and to consider other
 alternatives to continue Parenting Coordinator Batch's services to best serve the children's interests.
 

 We note in passing that this issue may also be resolved through a civil contempt proceeding against Defendant.
 

 IV. Conclusion
 

 For the foregoing reasons we affirm in part and remand in part.
 

 AFFIRMED IN PART, REMANDED IN PART.
 

 Judges CALABRIA and TYSON concur.
 

 "Notwithstanding the appointment of the parenting coordinator, the court shall retain exclusive jurisdiction to determine fundamental issues of custody, visitation, and support, and the authority to exercise management and control of the case." N.C. Gen.Stat. § 50-91(c) (2015).