IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-94

No. COA21-157

Filed 15 February 2022

Mecklenburg County, No. 15 CVD 16856

GABRIEL MEDINA, Plaintiff,

v.

BRANDY INGRAM de MEDINA, Defendant.

Appeal by Plaintiff from Orders entered 6 March 2020 by Judge Tracy H. Hewett in Mecklenburg County District Court. Heard in the Court of Appeals 22 September 2021.

*Fleet Law, PLLC, by Jennifer L. Fleet, for Plaintiff-Appellant.*
*No brief filed on behalf of Brandy Ingram de Medina, Defendant-Appellee.*

WOOD, Judge.

¶ 1 Gabriel Medina ("Plaintiff") appeals from an Amended Order Appointing a Parenting Coordinator (the "Amended PC Order"). Plaintiff also asks this Court to treat his brief as a petition for writ of certiorari to review an order issued *sua sponte* by the trial court pursuant to Rule 60(b)(1). In our discretion, we decline to treat Plaintiff's brief as a petition for a writ of certiorari and dismiss his argument concerning the trial court's Rule 60(b)(1) order. After careful review of the record and applicable law, we affirm the trial court's Amended PC Order.

## I.   Factual and Procedural Background

The parties were married on December 17, 1999, and three children were born of their marriage.  The parties subsequently separated on November 27, 2014 and signed a separation agreement the next day.  While separated, the parties began a contentious litigation over matters concerning their three minor children, with Plaintiff filing four separate motions following his original complaint, and Brandy Medina ("Defendant") filing three separate motions following her answer and counterclaims.

The parties divorced on March 14, 2016, but the contentious litigation continued.  From March 4, 2016, to May 4, 2017, Plaintiff filed nine additional motions and Defendant filed two new motions.  During the course of litigation, Plaintiff acquired a new counsel, Attorney Faith Fox, on January 25, 2017.  On behalf of Plaintiff, Fox specifically filed a motion for contempt; a motion for continuance; a motion for ex-parte emergency child custody; a motion for protective order, to quash, for sanctions, and for attorney fees; a motion to compel discovery, for sanctions, and for attorney fees; motions in limine; and a motion to compel testimony, for sanctions, and for attorney fees.

On May 4, 2017, the parties entered into a Memorandum of Judgment/Order (the "MOJ") to resolve their respective claims.  Per the MOJ, the parties were granted joint legal and physical custody of the minor children.  Accordingly, the parties agreed

that the minor children would live with Plaintiff and Defendant on alternating weeks. Plaintiff was granted final decision-making power over the health and education of the minor children and agreed to pay Defendant $1,200.00 per month in child support.

¶ 5        Defendant was granted final decision-making power over the religion and extra-curricular activities of the children, and she agreed to sign over the deed to the Parties' marital home. Pursuant to the terms of the MOJ, both parties voluntarily dismissed their claims for full custody, breach of contract, attorney fees, and child support. If the parties disagreed on a matter concerning the children, they were obligated under the MOJ to agree to the appointment of a parenting coordinator. The MOJ was formalized and signed by the trial court judge the following day.

¶ 6        From July through September 2018, the parties continued to engage in heated litigation. Defendant filed a motion for contempt, asserting Plaintiff would "not respond to any requests to decide on a parent coordinator." Plaintiff, additionally, moved out of the county where both parties had previously resided and moved the minor children into the school system in the county where he now resided. Thus, Defendant also filed a motion for modification of custody requesting that final decision-making authority over the education of the children be removed from Plaintiff. Defendant further filed a motion for a temporary parenting arrangement in order to return the children to the Mecklenburg County school system per the

Parties' separation agreement's requirement.

¶ 7        In response, Plaintiff filed a motion for contempt and attorney fees, claiming Defendant refused to appoint a parenting coordinator. Plaintiff also filed a motion for a prefiling injunction and a gatekeeper order, alleging Defendant had filed numerous "frivolous and groundless, often nonsensical" documents with the court. Plaintiff further asserted he had authority under the MOJ to relocate the children to a different school system and filed a motion to dismiss the temporary parenting arrangement, for sanctions, and for attorney fees.

¶ 8        Additionally, Plaintiff filed a motion to dismiss, for sanctions, and for costs on November 1, 2018, arguing Defendant had "filed multiple different motions on these claims in order to cause Father harm and harass him." In the motion, Plaintiff asserted that the trial court "lack[ed] jurisdiction to hear this matter as it is a contract to be heard under Specific Performance pursuant to their Agreement." On January 8, 2019, Plaintiff filed another motion for a prefiling injunction / gatekeeper order, contending Defendant had made "numerous filings" and "blatant lies to the [c]ourt."

¶ 9        The case proceeded to a hearing on the Parties' respective motions on November 1, 2018. During the hearing, Fox argued the family court lacked jurisdiction to hear Defendant's motion for contempt, motion for a temporary parenting arrangement, and motion to modify custody. Relying on Fox's representations of fact and law, the court granted Plaintiff's request for dismissals on

all of Defendant's motions. That same day, Fox submitted a proposed order based on the November 1 hearing. Defendant promptly objected, citing many errors in the proposed order. In response, the trial court scheduled a hearing for April 12, 2019, to reconcile the proposed order.

¶ 10        On November 2, 2018, the trial court granted Plaintiff's motion to appoint a parenting coordinator and entered an order appointing a parenting coordinator (the "Original PC Order"). The Original PC Order only made two decrees: "1. Father's Motion to Appoint a Parenting Coordinator, is GRANTED[;] [and] 2. This Order is enforceable by the contempt powers of the state[.]" The court did not state what issues between the Parties were to be addressed by the parenting coordinator nor the extent of the parenting coordinator's authority. As a result, various issues arose between the Parties concerning who possessed certain decision-making authority.

¶ 11        On April 12, 2019, the trial court conducted the hearing to reconcile the proposed order granting Plaintiff's motion for dismissal of Defendant's motions. Once more, Plaintiff reiterated his argument that the trial court lacked jurisdiction and requested the trial court to sign an order granting his motion to dismiss Defendant's motions. Plaintiff additionally requested the trial court issue a gatekeeper order to estop Defendant "from filing motions without prior court approval." The trial court signed the order proposed by Plaintiff's attorney granting Plaintiff's motion to dismiss Defendant's motions and orally granted the gatekeeper order.

¶ 12 After the trial court signed the April 2019 order granting Plaintiff's motion to dismiss, the trial court conducted an independent review of the case file. The trial court discovered the order granting Plaintiff's motion to dismiss Defendant's motions possessed multiple misstatements of fact. The trial court's review of the file showed Defendant had not "filed any more motions than []father," and Defendant did not file any motions related to "contract matters." The trial court's independent review further revealed the file did "not contain, or reference, any prior dismissals based on Family Court's lack of jurisdiction." As such, the trial court found the April 2019 order prepared by Plaintiff's attorney had multiple misstatements under the findings of facts portion, namely:

> Family Court []does not have jurisdiction over these matters, as it relates to these Parties and the Separation and Marital Settlement Agreement.
>
> Defendant/Mother is aware they are to seek the guidance of a Parent Coordinator, as outlined in the MOJ, and subsequent Order Appointing Parent Coordinator, prior to the filings of any subsequent motions.
>
> Defendant/Mother is aware that issues addressed in the Separation and Marriage Settlement Agreement, are not handled in Family Court.
>
> . . .
>
> Defendant/Mother knows that Family Court does not have jurisdiction over these matters.

¶ 13 The trial court's independent review further revealed that in addition to the

factual misstatements in the April 2019 Order, the gatekeeper order requested by Plaintiff's attorney included another factual misstatement: "Defendant is fully aware that contractual disputes are improper before this Court, as the parties were before the appropriate court May 4, 2017, and entered into a Consent Order as it relates to the Separation Agreement on May 5, 2017." Moreover, the trial court discovered it had relied on the requested gatekeeper order during the April 2019 hearing. The requested gatekeeper order also contained another additional factual misstatement, "per the MOJ, the parties were to consult with the Parenting Coordinator prior to any court filings." However, this directive to consult with a parenting coordinator prior to any court filings was not in the MOJ nor in the Original PC Order. Thus, the trial court had reiterated a factually incorrect statement during the April 2019 hearing due to its reliance on the gatekeeper order requested by Plaintiff's attorney.

¶ 14        In November 2019, the trial court notified the parties of the errors found as a result of its independent review. In the e-mail, the trial court alerted the parties of its intention to file a *sua sponte* Rule 60(b)(1) order to amend the factual and legal errors and attached an informal order for their review. Plaintiff, in response, disagreed that the trial court could issue a *sua sponte* Rule 60(b)(1) order and submitted a brief supporting his contention.

¶ 15        Thereafter, on February 6, 2020, Plaintiff and Defendant came before the trial court for a hearing on the trial court's intention to issue a Rule 60(b)(1) order. During

the hearing, the trial court noted that a statement within the procedural history of Plaintiff's memorandum of law was the "polar opposite" of a clause within the parties' November 2014 separation agreement: The procedural history in the memorandum of law stated "[t]he parties entered into a marital separation agreement which specifically states that the parties did not want the agreement incorporated into any subsequent divorce which is clearly reflected in the subsequent divorce judgment." However, in actuality, the separation agreement provided "[t]he parties further agree that this Agreement shall be incorporated, by reference or otherwise, in the final judgment of divorce . . . ."

¶ 16        After the hearing, the trial court entered a "Sua Sponte Rule 60(b)(1) Order Reversing an Order to Dismiss Defendant's Motions for Contempt; Temporary Parenting Arrangement; and Motion to Modify Child Custody" on March 6, 2020 (the "Rule 60(b)(1) Order"). Under the Rule 60(b)(1) Order, Plaintiff's motion for a gatekeeper order was denied.

¶ 17        Pursuant to the Rule 60(b)(1) Order, the April 2019 order which dismissed Defendant's motions for contempt, motion for modification of custody, and motion for a temporary parenting arrangement was reversed and the issues were once more before the trial court. Any previous order requiring Defendant to pay attorney fees to Plaintiff also was reversed. Per the Rule 60(b)(1) Order, Defendant was permitted to request the family court to reset her previously dismissed motions for hearing. On

the same day, the trial court entered an Amended PC Order, establishing in more detail the method of payment for, the scope of, and the parenting coordinator's authority under the PC Order.

¶ 18    Plaintiff filed a timely written notice of appeal of the Amended PC Order on April 8, 2020. Additionally, Plaintiff requests this court to treat his brief as a petition for a writ of certiorari for review of the *sua sponte* Rule 60(b)(1) Order.

## II.    Discussion

¶ 19    Plaintiff raises several arguments on appeal; each will be addressed in turn.

### A. Petition for Writ of Certiorari

¶ 20    Plaintiff asks this Court to treat her brief as a petition for a writ of certiorari to review the Rule 60(b)(1) Order. To apply for a writ of certiorari, an applicant must "file a petition . . . with the clerk of the court of the appellate division to which appeal of right might lie from a final judgment in the cause by the tribunal to which issuance of the writ is sought." N.C.R. App. P. 21(b). This Court does have the authority pursuant to our Rules of Appellate Procedure to treat a purported appeal as a petition for writ of certiorari, and we may grant the petition in our discretion. *Luther v. Seawell*, 191 N.C. App. 139, 142, 662 S.E.2d 1, 3 (2008). Here, Plaintiff failed to file a petition for writ of certiorari with our clerk of court; and, in our discretion, we decline to treat Plaintiff's brief as a petition for writ of certiorari as it does not meet the requirements set forth by our Appellate Rules for such consideration. *See* N.C.R.

App. P. 21(c). Plaintiff's petition for writ of certiorari is not properly before us, and we dismiss his argument concerning the Rule 60(b)(1) Order.

## B. The Amended Parenting Coordinator Order

### 1. *Standard of Review*

¶ 21 Plaintiff first contends the trial court lacked authority to issue the Amended PC Order, arguing the Amended PC Order was, in effect, an order modifying the MOJ, and thus urges this Court to adopt a *de novo* standard of review. We disagree. Here, the Amended PC Order's findings of fact acknowledged the Parties had entered into the MOJ on May 5, 2017, which "decreed that if the parties, after a good faith effort, vehemently disagree as to what is in the best interest of the children, they will agree to the appointment of a Parenting Coordinator (PC)." In other words, the MOJ did not establish the terms of a parenting coordinator but only bound the Parties to acquire a parenting coordinator should a disagreement arise. Additionally, the Original PC Order was signed eighteen months after the MOJ was issued, and the Original PC Order did not reference the MOJ.

¶ 22 Thus, the Amended PC Order was neither a part of, nor a modification to the MOJ, but rather an amendment to the Original PC Order. Therefore, because "[t]he trial court is vested with broad discretion in child custody cases," the question before this court is whether the trial court abused its discretion by issuing the Amended PC Order. *Nguyen v. Heller-Nguyen*, 248 N.C. App. 228, 238, 788 S.E.2d 601, 607 (2016)

(quoting *Dixon v. Gordon*, 223 N.C. App. 365, 371, 734 S.E.2d 299, 304 (2012)); *see Pulliam v. Smith*, 348 N.C. 616, 624, 501 S.E.2d 898, 902 (1998).

### 2. Analysis

Turning now to Plaintiff's argument that the trial court erred, or in the alternative abused its discretion, by issuing the Amended PC Order, we are guided by N.C. Gen. Stat. § 50-99 which states, "[f]or good cause shown, the court may terminate or modify the parenting coordinator appointment upon motion of any party, upon the agreement of the parties, or by the court on its own motion." N.C. Gen. Stat. § 50-99(a) (2021). *See* N.C. Gen. Stat. § 50-91(a) (2021) ("The court may appoint or reappoint a parenting coordinator at any time in a child custody action involving minor children brought under Article 1 of this Chapter on or after the entry of a custody order . . . [u]pon the court's own motion."); *see also Nguyen*, 248 N.C. App. at 240, 788 S.E.2d at 608. "Good cause" includes, but is not limited to, "lack of reasonable progress[,]" or a "determination that the parties no longer need the assistance of a parenting coordinator[,]" or an "[i]mpairment on the part of a party that significantly interferes with the party's participation in the process[,]" or an "inability or unwillingness of the parenting coordinator to continue to serve." N.C. Gen. Stat. § 50-99(c) (2021).

In accordance with Section 50-99, a trial court may *sua sponte* modify the parenting coordinator appointment if good cause is shown. Therefore, our inquiry

now turns to whether good cause existed to warrant the trial court to issue the Amended PC Order. We pause to note in the case *sub judice* that Plaintiff did not challenge any findings of fact in the Amended PC Order, and thus these facts are presumed to be supported by competent evidence and are deemed binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (first citing *Schloss v. Jamison*, 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962); then citing *Williams v. Williams*, 97 N.C. App. 118, 121, 387 S.E.2d 217, 219, (1990)).

Here, the trial court found the following facts in the Amended PC Order,

> 7. The May 5, 2017 Consent Order further decreed that if the parties, after a good faith effort, vehemently disagree as to what is in the best interests of the children, they will agree to the appointment of a Parenting Coordinator (PC).
>
>  . . .
>
> 10. The Nov. 2, 2018 Order is a bare bones order which does not set out the issues to be addressed, nor the authority of the Parenting Coordinator as per . . . [N.C. Gen. Stat. §] 50-92.
>
> 11. Particular issues in dispute are final decision making, specifically, how to consult with each other in good faith, school assignment, providing after school care, and other parenting and communication issues.
>
> 12. The Court finds from prior hearings and filings that this is a high conflict case, as defined by . . . [N.C. Gen. Stat. §] 50-90, and that the [appointment of a] Parenting Coordinator is in the best interest of the children.

The Amended PC Order's findings of fact illustrate the Parties were significantly

impaired due to the minimal guidance in the Original PC Order such that they could not participate in the parenting coordinator process. Additionally, the Original PC Order's lack of guidance halted reasonable progress between the Parties and the parenting coordinator as issues concerning the final decision-making power could not be resolved.

Furthermore, an examination of the Original PC Order shows it failed to comply with N.C. Gen. Stat. § 50-92 as it did not set out the "issues to be addressed nor the authority of the Parenting Coordinator . . . ." N.C. Gen. Stat. § 50-92(a) provides the

> authority of a parenting coordinator shall be specified in the court order appointing the parenting coordinator and shall be limited to matters that will aid the parties in complying with the court's custody order, resolving disputes regarding issues that were not specifically addressed in the custody order, or ambiguous or conflicting terms in the custody order.

N.C. Gen. Stat. § 50-92(a) (2021). However, the Original PC Order only states, "1. Father's Motion to Appoint a Parenting Coordinator, is GRANTED[;] [and] 2. This Order is enforceable by the contempt powers of the state[.]" By so ordering, the Original PC Order does not specify the parenting coordinator's authority as required by Section 50-92(a). Indeed, the Original PC Order's absence of guidance for the parenting coordinator was further illustrated when the Parties met with a parenting coordinator, but both the Parties and the parenting coordinator had "questions

regarding the process and terms of the Parenting Coordinator agreement."

Accordingly, we hold the Original PC Order's non-compliance with Section 50-92(a), paired with the trial court's findings of fact in the Amended PC Order, sufficiently establishes good cause existed to warrant the entry of an Amended PC Order. Thus, the trial court did not abuse its discretion by issuing the Amended PC Order.

### III.    Conclusion

After a careful review of the record and applicable law, we hold the trial court did not abuse its discretion by issuing the Amended PC Order and affirm the order of the trial court.

AFFIRMED.

Judges DILLON and COLLINS concur.